**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**CYNTHIA HITCHENS,**

    **Plaintiff,**

**v.**                                              **No. 16-cv-0576 SMV/KK**

**NANCY DOLL,**

    **Defendant.**

### MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment or, in the Alternative, Dismissal with Prejudice [Doc. 29], filed on October 28, 2016. Plaintiff responded on November 17, 2016. [Doc. 30]. Defendant replied on December 1, 2016. [Doc. 31]. The Court heard oral argument on January 23, 2017. [Doc. 35]. Having considered the briefing, oral argument, relevant law, and being fully advised in the premises, the Court will deny the motion and dismiss the counterclaim for revocation of inheritance for lack of jurisdiction.

### Background

This is a sad case. Plaintiff and Defendant are sisters and the only children of Ms. Evelyn Doll, who passed away on March 11, 2014. The women spent their mother's final years fighting over their anticipated inheritances. They continue that fight today.

Plaintiff alleges that the mother executed a Power of Attorney in favor of Defendant on July 19, 2011. [Doc. 4] at 2. Immediately (and perhaps even before), Defendant began liquidating the mother's assets, retitling her real property, and taking other steps to benefit

herself. *Id.* at 4.  Plaintiff alleges that their mother began having seizures, was diagnosed with dementia, and was hospitalized in November and December of 2012. *Id.*  During this time, the mother revoked the Power of Attorney for Defendant and signed one for Plaintiff instead.  Then, in January of 2013, the mother moved to California to be near Plaintiff.  *Id.* at 5.  In May of 2013, the mother executed an estate plan that designated Plaintiff as the beneficiary and "disinherited Defendant for her 'fraudulent' actions."  *Id.*  On May 16, 2013, the mother (with counsel) filed a lawsuit in federal court in California against Defendant and others, alleging that they had conspired to steal money, property, and assets from her.  *Id.*  (Plaintiff was not named as a party to that lawsuit.)

In June of 2013, Defendant traveled to California and picked up the mother from an assisted living facility and transported her back to New Mexico.  The mother then signed another Power of Attorney for Defendant, which Defendant used to continue to liquidate the mother's assets.  *Id.* at 6.  On November 19, 2013, the mother, Plaintiff, and Defendant entered into a Settlement Agreement to resolve the lawsuit (even though Plaintiff had not been named in it) and any disputes among them related to the lawsuit.  The Settlement Agreement provided, in pertinent part, that the mother would immediately execute a "New Estate Plan" (consisting of a will alone or a will combined with a revocable trust) naming her two daughters (Plaintiff and Defendant) as her "primary beneficiaries in equal shares." [Doc. 9] at 9.  The Agreement further provided that "all current and future assets held by [the mother] shall be distributed through the New Estate Plan."  *Id.*  Finally, the mother agreed not to revoke or amend the New Estate Plan unless she and both daughters agreed to the change in writing.  *Id.*

On the same day that the three signed the Settlement Agreement, the mother signed a will. As contemplated by the Settlement Agreement, the will named the sisters as the sole heirs taking in equal shares. *Id.* The will also contained a "No Contest Clause," which prohibited the heirs from contesting the will. It read:

> If any person who is a legatee or devisee or beneficiary shall, directly or indirectly contest or dispute the probate of this Will, or maintain before any judicial body that this is not my Last Will and Testament or call into question before any tribunal the provisions of any legacy, devise, or provision herein, or claim to be a child or heir of mine and establish such claim in a court of competent jurisdiction, then I absolutely revoke the legacy, devise, or provision for such person and declare the same void and of no effect, and the remaining provisions hereof shall be carried into effect, disregarding those for such person, and the portions for such other legatees, devisees or beneficiaries shall be increased proportionately. To any other person, directly or indirectly contesting or otherwise questioning my Will or claiming to be an heir in the manner described in the preceding sentence, I bequeath the sum of One Dollar.

*Id.* at 17.

The mother passed away on March 11, 2014, less than four months after she signed the Settlement Agreement and will. [Doc. 4] at 7. Defendant initiated probate proceedings in a New Mexico state court on June 9, 2014. *See* [Doc. 9] at 4; *In re Evelyn C. Doll*, case number D-202-PB-201400282. On or around August 22, 2014, Defendant "quitclaimed" a piece of real estate that had belonged to the mother to Plaintiff; it is unclear whether this transfer occurred as part of the probate proceedings or whether it was transferred outside probate. [Doc. 4] at 7; *see* [Doc. 31] at 2 (Defendant's reply, alleging that Defendant distributed the estate, which consisted of two pieces of real estate in Silver City, "signing the most valuable and profitable property

3

over to Plaintiff"). In October of 2014, Plaintiff requested an accounting of the mother's assets, but Defendant did not provide the accounting. [Doc. 4] at 8.

Plaintiff filed suit in this Court on June 14, 2016. [Doc. 1]. She amended her complaint on June 20, 2016. [Doc. 4]. The Amended Complaint alleges that Defendant had been taking advantage of the mother's "diminished mental and physical capacity" since 2011, in order to take control of assets and money to benefit herself, to the detriment of Plaintiff's anticipated inheritance. *Id.* at 9, ¶ 70. Plaintiff alleges that Defendant violated the Settlement Agreement by distributing the mother's assets outside the New Estate Plan (i.e., the will) in several ways. For example, she alleges that Defendant: transferred (or directed the mother to transfer) the mother's assets and/or changed the beneficiary designations, *id.* at 9, ¶ 73; unduly influenced the mother to make *inter vivos* transfers of property and assets, *id.* at 10, ¶ 76; filed transfer-on-death deeds for the mother's real property, *id.* at 12, ¶ 94; improperly handled money received from liquidation of stocks, including self-dealing of such monies, *id.* at 13, ¶ 95; lied to her about their mother's assets and properties and lied about how she was handling such assets and properties, *id.* at 14, ¶ 110; and transferred and liquidated stocks, assets, and properties outside the New Estate Plan, *id.* at 16, ¶ 124.

Based on these and other facts, the Amended Complaint lists ten counts. However, three are requests for relief, rather than causes of action. *See id.* at 8–11. The remaining seven counts are for: violation of the Uniform Power of Attorney Act and breach of fiduciary duties (Count IV); breach of contract, i.e., the Settlement Agreement (Count V); conversion

(Count VI); fraud (Count VII); fraudulent misrepresentation (Count VIII); conspiracy to commit fraud (Count IX); and unjust enrichment (Count X). *Id.* at 11–17.

Defendant answered on August 10, 2016. [Doc. 9]. She contests Plaintiff's assertion of diversity jurisdiction. *Id.* at 2. She argues that the Settlement Agreement precludes this Court's jurisdiction, and she asserts counterclaims to enforce the Settlement Agreement and to revoke Plaintiff's share of the estate. *Id.* at 3–6.

Plaintiff answered the counterclaims on August 31, 2016. [Doc. 15]. She argues that the Settlement Agreement does not preclude this Court's jurisdiction. *Id.* at 6. Additionally, she argues that to the extent any of the counterclaims require the Court to enforce the mother's will or administer her estate, such counterclaims are barred by the probate exception to federal court jurisdiction. *Id.* at 3, 9 (citing *Marshall v. Marshall*, 547 U.S. 293 (2006)).

## Analysis

On October 28, 2016, Defendant filed her Motion for Summary Judgment or, in the Alternative, Dismissal with Prejudice. [Doc. 29]. The Court addresses the points raised in the motion in order of analytical convenience. First, Plaintiff agrees with Defendant that no claim arising before November 19, 2013, may be brought in this action because all such claims were already litigated, and resolved, in the California action. No such claim is at issue in this lawsuit. Therefore, the motion will be denied as moot with respect to claims arising before November 19, 2013. Second, Defendant fails to meet her burden as the movant to show that Plaintiff's other claims—those arising on or after November 19, 2013—fail to state a claim. The motion will be denied with respect to the claims arising on or after November 19, 2013. Third, Plaintiff has

sufficiently shown that it is not legally certain that she will not recover more than $75,000. Thus, the motion will be denied with respect to the amount-in-controversy argument. Fourth, the motion will be denied as to Defendant's counterclaim to enforce the will's no-contest clause, and furthermore, the Court will dismiss the counterclaim for lack of jurisdiction under the probate exception. Fifth, Defendant's requests for sanctions will be denied.

### I.  Defendant's Motion for Summary Judgment regarding claims arising before November 19, 2013, is moot because no such claim is asserted.

Defendant moves for summary judgment on all claims that were raised in the California case and disposed of by the November 19, 2013 Settlement Agreement. [Doc. 29] at 3–6. But Plaintiff explains that she is not attempting to bring any of the claims resolved by the November 19, 2013 Settlement Agreement. [Doc. 30] at 14. While she included in her Amended Complaint many of the same factual allegations that were asserted in the California case "as background information," Plaintiff has made clear, in her briefing and at oral argument, that she is bringing claims against Defendant only for actions that occurred *after* the Settlement Agreement was executed. *Id.* at 14, 15. In brief, she claims that Defendant violated the Settlement Agreement by distributing their mother's assets outside the New Estate Plan. *Id.* at 13–18. There really is no dispute; Plaintiff brings claims only for actions occurring on or after November 19, 2013. Accordingly, Defendant's motion for summary judgment on the claims arising before November 19, 2013, will be denied as moot.

## II.  Defendant fails to show that the claims arising on or after November 19, 2013, should be dismissed.

Defendant moves to dismiss "the remainder" of the Amended Complaint—that is, the claims arising on or after November 19, 2013—for failure to state a claim.  [Doc. 29] at 7; [Doc. 31] at 6.  A motion to dismiss for failure to state a claim is governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure, although Defendant fails to cite the Rule in her motion.  Indeed, Defendant cites no legal authorities whatsoever, nor does she cite to any portion of the Amended Complaint.  [Doc. 29] at 7; [Doc. 31] at 6.  The Amended Complaint alleges that after the Settlement Agreement was executed, Defendant violated it by distributing (or improperly directing the mother to distribute) assets outside the New Estate Plan.  Specifically, it alleges that Defendant (directly or through the mother) changed beneficiary designations, transferred assets, filed transfer-on-death deeds for real property, and improperly handled monies from liquidated stocks.  [Doc. 4] at 9, 10, 12–14, 16.  In deciding a motion to dismiss, the Court "must accept all the well-pleaded allegations . . . as true and must construe them in the light most favorable to the plaintiff."  *Thomas v. Kaven*, 765 F.3d 1183, 1190 (10th Cir. 2014).  As the movant, Defendant bears the burden of showing that the alleged facts, even if true, would not sustain Plaintiff's claims.  She has not done so.  The Court cannot do it for her.  The motion to dismiss will be denied.

## III.  Plaintiff sufficiently shows that more than $75,000 is in controversy.

Defendant argues that Plaintiff has failed to establish the requisite jurisdictional amount of more than $75,000.  Defendant's argument is based on the premise that all of the claims raised in the Amended Complaint are barred by the Settlement Agreement.  *See* [Doc. 29] at 8 ("The

7

entirety of Plaintiff's claims which refer to jurisdictional dollar amounts refer only to dates and actions that were settled in the Settlement Agreement."); *see also* [Doc. 9] at 2, ¶ 3 (Defendant's answer denying Plaintiff's allegation that the Court has diversity jurisdiction). In other words, since all of Plaintiff's claims are barred, there cannot possibly be more than $75,000 in controversy.

In response, Plaintiff argues that (1) the Amended Complaint alleges that the amount in controversy exceeds $75,000, and (2) her factual allegations support that amount. [Doc. 30] at 20 (citing [Doc. 4] at 2, ¶ 7). Additionally, she points to the Amended Joint Status Report and Provisional Discovery Plan ("Amended JSR") and her Amended Initial Disclosures, both of which provide specific factual support for the amount in controversy. [Doc. 30] at 20 (citing [Doc. 25] at 10–16; [Doc. 30-6] at 6–9). For example, she lists various assets that she believes Defendant distributed outside the New Estate Plan and in violation of the Settlement Agreement, and she includes her estimate of what she should have received pursuant to the Settlement Agreement (had those assets been distributed via the New Estate Plan), e.g., real property located at 32nd street in Silver City, New Mexico ($85,000); a triplex, also in Silver City, New Mexico ($4,500); AT&T stock ($133,601.85); Verizon stock ($32,124.36); other Verizon stock ($563.99); Tenneco stock ($1,209.80); and other Tenneco stock ($1,302.80). [Doc. 25] at 10–16; [Doc. 30-6] at 6–9.

In reply, Defendant argues, "Plaintiff has no idea about the value of her claims, nor— more importantly—any way to prove any claims which might somehow be outside the terms of the Settlement Agreement." [Doc. 31] at 5–6 (citing [Doc. 30] at 17). This argument is based on

the fact that there was no accounting of the mother's property, either at the time the Settlement Agreement was executed or at her death. *Id.* Defendant does not address the specific assets listed in the Amended JSR, nor Plaintiff's allegation that she is entitled to "at least $258,302.80" for assets that Defendant allegedly distributed outside the New Estate Plan and in violation of the Settlement Agreement. *Id.*; [Doc. 25] at 16 (emphasis omitted).

Subject matter jurisdiction under 28 U.S.C. § 1332(a) requires diversity of citizenship between the parties and an amount in controversy that exceeds "$75,000, exclusive of interest and costs." *McPhail v. Deere & Co.*, 529 F.3d 947, 952 (10th Cir. 2008) (quoting 28 U.S.C. § 1332(a)). "Although allegations in the complaint need not be specific or technical in nature, sufficient facts must be alleged to convince the district court that recoverable damages will bear a reasonable relation to the minimum jurisdictional floor." *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1171 (10th Cir. 2011) (internal quotation marks omitted).

If the defendant challenges the amount in controversy, the plaintiff has the burden to show "that it is not legally certain that the claim is less than the jurisdictional amount." *Mocek v. City of Albuquerque*, 813 F.3d 912, 934–35 (10th Cir. 2015) (quoting *Woodmen of the World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1216 (10th Cir. 2003)).

> The legal certainty standard is very strict. As a result, it is difficult for a dismissal to be premised on the basis that the requisite jurisdictional amount is not satisfied. There is a strong presumption favoring the amount alleged by the plaintiff. Generally, dismissal under the legal certainty standard will be warranted only when a contract limits the possible recovery, when the law limits the amount recoverable, or when there is an obvious abuse of federal court jurisdiction.

9

*Woodmen of the World*, 342 F.3d at 1216-17 (internal citation omitted). The plaintiff may meet her burden by supplementing the allegations in the complaint with "other documentation." *McPhail*, 529 F.3d at 956. For example, she may point to answers to interrogatories, affidavits, or "other evidence." *Id.* at 956–57. "[D]ocuments that demonstrate plaintiff's own estimation of [her] claim are a proper means of supporting the [amount in controversy], even though they cannot be used to support the ultimate amount of liability." *Id.* In other words, when deciding a challenge to the amount in controversy, a court may consider certain materials regardless of whether those materials would be admissible at trial. *Id.* In *McPhail*, the Tenth Circuit Court of Appeals expressly held that emails and letters memorializing counsel's "settlement discussions" were sufficient to support the amount in controversy even though they would not be admissible at trial. *Id.* at 957.

Here, Plaintiff affirmatively alleges that more than $75,000 is in controversy. [Doc. 4] at 2. She also points to the factual allegations made in her Amended Initial Disclosures and the Amended JSR. These documents are not unlike the settlement communications in *McPhail*; neither would be admissible at trial, but both are relevant to the amount-in-controversy determination. The factual allegations in the Amended Complaint are reasonably related to a potential recovery of more than $75,000. *See* [Doc. 4] at 9–10, 12–14, 16. Moreover, Plaintiff's Amended Initial Disclosures and the Amended JSR are sufficient to meet her burden. *See* [Doc. 25], [Doc. 30-6] at 6–9. It is not legally certain that Plaintiff cannot recover more than $75,000. The motion will be denied.

IV. Defendant's counterclaim for revocation
of inheritance is barred by the probate exception.

Defendant moves for summary judgment on her own counterclaim for revocation of Plaintiff's inheritance. [Doc. 29] at 6–7; *see* [Doc. 9] at 5. Defendant's counterclaim is based on filings in the probate matter.[1] [Doc. 29] at 6–7; *see* [Doc. 9] at 5. The parties agree that Plaintiff filed a "Verified Petition to Remove Nancy Doll as Personal Representative . . ." which was later withdrawn. *See* [Doc. 30-4] at 8 (copy of the Verified Petition). They disagree about the legal effect of these filings. Defendant argues that the filing of the Verified Petition triggered the no-contest clause of the will, and that Plaintiff's share of the estate should therefore be revoked. *See* [Doc. 9] at 5 (Defendant's counterclaim for revocation of inheritance); [Doc. 29] at 6–7 (Defendant's motion for summary judgment on the counterclaim); [Doc. 31] (Defendant's reply to her motion). Plaintiff disagrees, arguing that the counterclaim is barred by the probate exception to federal court jurisdiction. [Doc. 15] at 6–7 (Plaintiff's answer to Defendant's counterclaim for revocation of inheritance); *id.* at 8–9 (Plaintiff's argument that the counterclaim is barred by *Marshall*, 547 U.S. 293); [Doc. 30] at 18–20 (Plaintiff's response to Defendant's motion for summary judgment on the counterclaim).

The probate exception to federal jurisdiction is a long-standing, judicially created doctrine that precludes federal courts from assuming jurisdiction over state probate claims. *Marshall*, 547 U.S. at 299. Federal courts retain jurisdiction over a probate-related claim, unless it requires the court to (1) probate or annul a will, (2) administer a decedent's estate, or (3) "dispose of property that is in the custody of a state probate court." *Id.* at 311–12. The

---

[1] At oral argument, defense counsel expressly confirmed that the counterclaim for revocation of inheritance was based on a filing in the probate court. Oral Argument held on January 23, 2017, at 9:38, 9:40.

11

probate exception reserves these—and only these—purely probate matters to the exclusive jurisdiction of the state courts. *Id.*

> Courts have interpreted the first two prohibitions set forth in *Marshall*, that federal courts cannot "probate or annul a will" or "administer a decedent's estate" to mean that federal courts do not have jurisdiction "over any claims for relief or theories of recovery that require a *determination concerning the validity and/or construction of a testamentary document*."

*Parks v. Kiewel*, No. 6-15-1196-JTM-GEB, 2015 U.S. Dist. LEXIS 155979, at *13 (D. Kan. Nov. 18, 2015) (unpublished) (emphasis added) (quoting *Grey v. Johansson*, No. 13-7497, 2014 U.S. Dist. LEXIS 119223, at *12–13 (D.N.J. Aug. 26, 2014) (unpublished)).

The Court determines that Defendant's counterclaim for revocation of Plaintiff's inheritance under the will's no-contest clause would require the Court to interpret, apply, and enforce a testamentary document, i.e., the mother's will. To do so would be beyond this Court's jurisdiction. *See Marshall*, 547 U.S. at 311–12 (distilling the probate exception); *Vaughan v. Montague*, 924 F. Supp. 2d 1256, 1268–69 (W.D. Wash. 2013) (holding that a counterclaim arising from an alleged breach of a trust agreement's no-contest clause was barred by the probate exception). The motion for summary judgment on the counterclaim will be denied. Furthermore, the Court will dismiss the counterclaim for lack of jurisdiction.

### V.  Defendant's requests for sanctions will be denied.

Defendant argues that Plaintiff violated the Settlement Agreement by filing this suit. [Doc. 29] at 8. Specifically, she argues that Plaintiff is attempting to re-litigate claims that arose before, and thus were resolved by, the Settlement Agreement. *Id.* Defendant asks for dismissal with prejudice, costs, and attorney's fees as sanctions "for Plaintiff's bringing this action in

violation of the Settlement Agreement." *Id.*  However, it is clear that Plaintiff is asserting no claim that arose before the execution of the Settlement Agreement.  This suit, therefore, does not violate the Settlement Agreement.  Defendant's request for sanctions for filing the lawsuit is without merit and will be denied.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendant's Motion for Summary Judgment or, in the Alternative, Dismissal with Prejudice [Doc. 29] is **DENIED** in its entirety.  Defendant's counterclaim for revocation of inheritance is **DISMISSED without prejudice** for lack of jurisdiction.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**